**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**VICKI DEAN, o/b/o C.R., a minor**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:06-cv-522-Orl-28DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Plaintiff's appeal of the Commissioner's denial of her application (on behalf of her minor son) for Supplemental Security Income based on disability. The Court has reviewed the administrative record, the briefs of the parties, and the applicable law. It is **respectfully recommended** that the Commissioner's decision be **AFFIRMED**.

### *PROCEDURAL HISTORY*

Plaintiff Vickie Dean, on behalf of her child (herein "Claimant"), protectively filed an application for Child's Supplemental Security Income (SSI) on February 7, 2001 (R. 85-87). The claim was denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 44-60, 67, 68-71, 74-78). On February 24, 2003, the ALJ issued a decision denying Plaintiff's application (R. 20-27). The Appeals Council denied

Plaintiff's Request for Review (R. 4-6), making the ALJ's decision the final decision of the Commissioner. This action followed.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims her child became disabled commencing on August 11, 1997 (R. 115), due to "trouble in math and reading at school" (R. 108). She describes his disability as: "my son understanding math, reading. Also he does not understand his teacher" (R. 115), and notes that he may have attention deficit disorder ("ADD" or ADHD, for attention deficit hyperactivity disorder) (R. 112, 123).

*Summary of Evidence Before the ALJ*

Claimant was 11 years old at the time of the ALJ's decision (R. 26, 85), and was a student in public school. At the time of the hearing, Claimant was in the fourth grade, having repeated the first and third grades (R. 47).

The relevant medical evidence[1] of record includes progress notes from the Halifax Health Center, dated November 18, 1998 to March 14, 2001, indicating questionable ADHD (R. 149-153). On March 14, 2001, ADD medication was prescribed (R. 149).

On April 5, 2001, Malcolm Roberts, M.D., a psychiatrist with Halifax Behavioral Services, evaluated Claimant (R. 180-82). On psychiatric evaluation, Claimant was alert and fully oriented, with memory intact in all phases. He showed mild to moderate motor hyperkinesis, attention was

---

[1] The medical records include emergency room records for various injuries, including being hit with a baseball bat (R. 229-231) and suffering a twisted ankle (R. 221-224). Claimant also hit a van while riding his bike and was hospitalized (R. 188-206). Other medical evidence introduced at the Appeals Council level include negative MRI of the head, treatment for fever and headaches. Plaintiff does not claim disability from any of these illnesses or injuries, nor does she contend that records presented to the Appeals Council justify a remand under sentence six of 42 U.S.C. § 405(g). As such, the Court focuses on the records before the ALJ relevant to Claimant's claimed disability of ADHD.

short and concentration was poor (R. 181). Mood was happy and affect was full. Diagnosis was ADHD, primarily combined type and he was placed on Concerta.

On May 9, 2001, Claire C. Huisentruit, Psy. D., a state agency non-examining consultant, opined that Claimant's impairments of ADHD and academic delay vs. SLD were severe, but did not medically equal or functionally equal the listings (R. 159-160). She indicated that he has a marked limitation in attending and completing tasks, a less than marked limitation in acquiring and using information, and no limitation in interacting and relating with others, moving about and manipulating objects, caring for himself, or in health and physical well being (R. 161-162).

On a May 30, 2001 followup visit with Halifax Behavioral, Claimant had a normal mental status examination, with good attention and concentration, alert and cooperative behavior, and normal speech and motor activity noted (R. 179). It was reported that Claimant did poorly in school for the past year, but that Concerta was somewhat effective in last month of school. *Id.* A new medication (Vistaril) was added.

On follow up visit three months later, mental status examination was still noted to be unremarkable, with good concentration, normal motor, and a happy mood (R. 178). Dr. Roberts noted that the Vistaril was ineffective for sleeping, "otherwise no significant problems reported." *Id.* Trazadone was substituted for the Vistaril.

On September 1, 2001, Serene L. Bloomfield, Ed..D., a state agency non-examining consultant, opined that Claimant's impairments of ADHD and allegations of slow learning were severe, but did not medically equal or functionally equal the listings (R. 165-66). She said that he has a marked limitation in attending and completing tasks, less than marked limitations in acquiring and using information and interacting and relating with others, and no limitation in interacting and relating

with others, moving about and manipulating objects, caring for himself, or health and physical well being. (R. 167-68).

On return visit to Halifax Behavioral on November 12, 2001, Claimant continued to present with a normal mental status examination, although subjectively, Plaintiff felt her son's attitude was worse (R. 177). Treatment notes indicate that Claimant had not had an impressive response to Concerta, and Adderal was substituted. Follow up on February 6, 2002, revealed another normal mental status examination (R. 176), but Plaintiff continued to complain of "aggravating" behavior from her son. Treatment notes indicated: "Christopher's behavior has been impulsive talks out in class and somewhat hyper. His grades are good however, and he is completing tasks." *Id.* Tenex was prescribed.

Three months later, on May 2, 2002, Plaintiff's Adderall was increased as Claimant was noted to be off task, not completing his work, and not sitting still (R. 175). Mental status examination remained mostly normal, but Claimant was noted to be fidgety and his concentration had gone from "good" to "fair."(R. 175). Return visit on August 6, 2002, indicated that Claimant's negative behaviors occurred when his medication wore off (R. 174). Plaintiff reported some change when dose was increased. Treatment notes indicate that Plaintiff's parenting skills were questionable. Mental status examination continued to be normal, except Claimant's mood was noted to be "so so." His concentration was noted to be "good." His Tenex dosage was increased.

By return visit in October of 2002, Claimant was "doing well in school" and was reportedly "on the honor roll." (R. 171). Mental status exam revealed no abnormality, and plan was to continue medicine and work on parenting strategies to improve Claimant's behavior.

Plaintiff and the claimant were represented by counsel at the administrative hearing held December 12, 2002. The Claimant appeared and testified that he was "a little behind" in his school work that year (R. 48); that he did not miss much school, he liked school, completed his homework and school work, that he had friends at school and home, and he did what his teachers asked him to do (R. 48). He was on medication, and it helped. *Id.* He testified that he liked to play on the trampoline, ride his bike and make pictures (R. 49). He enjoys watching movies and watches the whole movie. *Id.* He takes the bus to school each day, and dresses and feeds himself (R. 49-50). He has problems understanding his teacher's instructions, but he hardly ever gets in trouble at school and has not been suspended or expelled (R. 50). He fights with his brothers at home (R. 51).[2] He takes his medication every day without forgetting, and the medication helps him "get along." (R. 51).

Plaintiff testified that Claimant went to the principal's office two days in a row for being the "class clown," but he was now back in class, and his behavior was better (R. 52). Plaintiff stated that "sometimes the medication that he is on does not help him any" and noted that sometimes it works and sometimes it does not (R. 52, 53). Plaintiff testified that her son is seen every three months at Halifax Behavior for medication management (R. 54). Claimant is in a regular class at school, except for a half hour ESE class each day (R. 55). Plaintiff felt that her son starts tasks but does not complete them (R. 56), noting that he does that no more than other children do (R. 57). Plaintiff also testified that her son was impulsive, and sometimes calm and sometimes hyper (R. 57-8). She acknowledged that her son was calm at the hearing, because he did not know the judge so he "will try and act good." (R. 58). Plaintiff stated that Claimant "likes to tell a lie sometimes." (R. 59).

---

[2] Claimant lives with his mother, brother and two half- brothers, all of whom receive SSI for ADHD and learning disabilities (R. 53 and 59).

The record before the ALJ also includes school records from October 1998 through September 2001 (R. 125-148). Claimant was placed in a regular 3rd grade class (R. 126). Achievement testing showed Claimant to be average in some areas but below average in most (R. 144). In early 2001, prior to Plaintiff being placed on regular ADHD medication by Dr. Roberts, his teacher noted significant problems paying attention and staying on task (R. 126-129, 133-36) and that he "doesn't understand simple directions sometimes because he is daydreaming or chooses not to listen." (R. 127).

In the decision dated February 24, 2003, the ALJ accepted the testimony of Claimant and his mother as "essentially credible." (R. 26). The ALJ determined that Claimant "has manageable functional limitations due to an attention deficit disorder with hyperactivity. However, his condition appears to have responded well to therapy and medication, and according to progress notes he is doing well in school." (R. 26). In reference to the six areas of functioning assessed for childhood disability, the ALJ concluded that Claimant has:

> the following functional limitations resulting from the combined effect of all of the claimant's impairments and reasonably related symptoms: less than marked limitations in the domain of acquiring and using information; marked limitations in the domain of attending and completing tasks when the child is without medications; less than marked limitations in the domain of interacting and relating with others; less than marked limitations in the domain of moving about and manipulating objects; less than marked limitations in the domain of caring for yourself; and less than marked limitations in the domain of health and physical well being.

(R. 26).

The ALJ concluded that the impairment does not functionally equal the listings and Claimant had not been under a disability at any time through the date of the decision (R. 26).

### *THE STANDARD OF REVIEW*

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, a claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner first determines whether the claimant is engaged in substantial gainful activity. If not, the next determination is whether the claimant has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment or combination of impairments meet *or* is medically *or* functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfy the duration requirement. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924 - 416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### *ISSUES AND ANALYSIS*

Plaintiff raises two issues that she feels constitute error: the ALJ's failure to mention Claimant's school records and failure to properly evaluate Claimant's functional limitations. The Court sees no such error and finds that the ALJ's decision is supported by substantial evidence and was made in accordance with the proper legal standards.

*School Records*

Plaintiff notes that the regulations provide that in determining whether a child is disabled, information from nonmedical sources, such as "parents, teachers, and other people" must be considered. 20 C.F.R.§ 416.924a(a), yet "[d]espite this fact, the ALJ failed to even reference, much less provide any analysis of the school records contained in the record in this case." (Doc. No. 19 at

12). This is factually incorrect. The ALJ did reference the school records (R. 25) and specifically recognized that Claimant's ADHD is "attended by problems with education," (R. 25), but noted that his condition is amenable and responsive to conservative treatment and medications. This conclusion is supported by substantial evidence. While Plaintiff correctly notes the obviously low achievement scores in school testing, that testing occurred *prior* to any official diagnosis of and treatment for the ADHD. As set forth above, Claimant improved while on the medication, as evidenced by the medical records (which note that Claimant's grades were "good", he was "doing well in school", "on honor roll"), and the testimony of Plaintiff and Claimant. Claimant was in regular classes, with one half hour of ESE, and, according to his testimony, he enjoyed school and completes his homework and schoolwork.[3]

As for the second assignment of error, Plaintiff contends that Claimant's condition functionally equals a listed impairment. When determining functional equivalence, the ALJ must assess the degree to which the child's functional limitations interfere with the child's normal life activities. *See Shinn o/b/o Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1278-79 (11th Cir. 2004). A child's functional limitations are evaluated in the following six broad functional areas, called domains: (1) Acquiring and using information; (2) Attending and completing tasks;(3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well being. 20 C.F.R. § 416.926a(b)(1)(i-vi); *Shinn*, 391 F.3d at 1279. A medically determinable impairment or combination of impairments functionally equals

---

[3]Plaintiff points out that the ALJ did not have school records for the period after September 2001. While this is true, Plaintiff was represented by counsel below, and the issue of the possible incompleteness of the school records was addressed at hearing (R. 55-56). The ALJ gave Plaintiff additional time to supplement the records (R. 56), and counsel did, indeed, file several medical records subsequent to the hearing (R. 171-244). To the extent relevant school records were not presented post-hearing, the fault lies not with the Commissioner.

a listed impairment if it results in marked limitations in two of the above domains. 20 C.F.R. § 416.926a(d).

Here, the ALJ determined that Claimant had only one marked limitation, which was in domain (2) - attending and completing tasks (R. 26).[4] Plaintiff argues that the ALJ erred in finding that Claimant has a "less than marked" limitation in domain (1) – acquiring and using information.

A marked limitation is a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2). A claimant has a "marked" limitation if his impairment interferes "seriously" with his ability to independently initiate, sustain, or complete activities. *Id*. In the domain of acquiring and using information, the Commissioner "considers how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g).

Plaintiff contends that the credible testimony of Plaintiff and Claimant "supports a finding of a marked limitation in this domain." (Doc. No. 19 at 16). This, however, is not the standard on review. The issue is not whether there is evidence to support *Plaintiff's* suggested finding, but whether *the ALJ's* finding of less than marked limitation in this domain is supported by substantial evidence. The two non-examining consultants found that Claimant had less than marked limitations in this area. As noted earlier, Claimant was placed in regular classes, enjoyed and attended school consistently, and did not testify as to any problems learning information or using the information he learned. He stated that he completes his homework and classwork. There is no evidence of low IQ scores, and nothing in the treatment notes reflects marked limitations in the ability to learn. While Claimant had average and below average test scores prior to being placed on medication, following the medication, his grades improved, and he even made honor roll. Every mental status evaluation

---

[4]The ALJ found this to be a marked limitation "when the child is without medications." (R. 26).

since being placed on medication was noted to be essentially normal with respect to intact memory, fair judgment and insight and the absence of any abnormal thought process that could arguably interfere with learning.  Speech was normal throughout, and although Plaintiff *believed* her child to have a learning disability, there is no diagnosis or evidence of same in the record.

While Plaintiff points to failing grades in school, the Commissioner correctly contends that the difficulties Claimant experienced in school were not shown to be a function of an inability to learn, but were a result of his marked limitation in the ability to attend and complete tasks due to his ADHD.  Claimant's difficulties in understanding directions were never attributed to a lack of intelligence, but rather, as noted by his teacher, "because he is daydreaming or chooses not to listen." (R. 127).

While the Court is not without sympathy for what must be a challenging set of circumstances for Plaintiff and Claimant, the decision of the Commissioner is supported by substantial evidence and was made in accordance with appropriate legal standards.  It is therefore **respectfully recommended** that the decision be **AFFIRMED.**  If this recommendation is adopted, the Clerk is directed to enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 15, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy